IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GASBARRE PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 3:16-53 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| DIAMOND AUTOMOTIVE GROUP | ) | |
| FLORIDA, INC. and INDUSTRIAL DE | ) | |
| AUTOPARTES PARRAL S. DE R. L. DE | ) | |
| C.V., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

I.  Introduction

This diversity action for breach of contract was filed on February 24, 2016, by Plaintiff Gasbarre Products, Inc., a Pennsylvania corporation. (ECF No. 1.) Gasbarre alleges that it contracted for the sale of, and in fact delivered, two pieces of equipment to the Defendants, Diamond Automotive Group Florida, Inc. ("Diamond Florida") and Industrial de Autopartes Parral S.de R.I. de C.V. ("IAP"), for which Defendants have not yet paid almost $1,000,000. (*Id*.) While it brings relatively run-of-the-mill contract claims, Gasbarre's Complaint quickly hit a wall. Diamond Florida filed a motion to dismiss on the grounds that Gasbarre's contract was only with IAP and that the Court has no personal jurisdiction over Diamond Florida. (ECF No.

1

8.) At the same time, IAP, a Mexican corporation represented by the same attorney as Diamond Florida, proved quite difficult to serve.[1]

After approximately eight months, Gasbarre filed a motion for alternative service on IAP, which the Court granted. (ECF No. 32.) Thus, IAP has finally been served and the Court turns to Diamond Florida's motion to dismiss for lack of personal jurisdiction and failure to state a claim. Gasbarre argues that Diamond Florida should not be dismissed from the lawsuit under the theory that Diamond Florida is an alter ego of IAP. For the reasons that follow, Diamond Florida's motion will be granted with respect to the claim for breach of the covenant of good faith and fair dealing and denied in all other respects.

## II. Jurisdiction and Venue

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania.

## III. Factual Background

### A. Gasbarre's Complaint

The following facts are alleged in the Complaint, which the Court will accept as true for the sole purpose of deciding the pending motion.

---

[1] According to Gasbarre, its attorneys attempted to serve IAP through the Mexican Central Authority at the address IAP provided on the contract. They later received a notice from the Chihuahua Judiciary that the address listed was not IAP's domicile. A letter sent to the attorney for IAP requesting the proper address for IAP and an explanation as to why an improper address had been used on the contract was ignored. The same attorney, who also represents IAP, previously indicated he was not authorized to accept service on behalf of IAP. (ECF No. 31.)

On October 3, 2012, Gasbarre was contacted about supplying a piece of equipment to Diamond Automotive[2] and IAP. (ECF No. 1 ¶ 14.) Negotiations took place over the course of several months. (*Id*. ¶¶ 15-26.) Gasbarre's sales manager visited Diamond Automotive's office in Chihuahua, Mexico in November of 2012. (*Id*. ¶ 19.) Employees from either IAP and or Diamond Automotive also visited Gasbarre's office in Dubois, Pennsylvania several times. (*Id*. ¶ 27.) A proposal review was conducted in Chihuahua, Mexico on February 12, 2013, and attended by several employees of IAP and or Diamond Automotive, including Said Carbajal and Gregorio Carbajal, and Gasbarre's sales manager. (*Id*. ¶ 28.) After the proposal review, Diamond Automotive requested a revised proposal with IAP listed as the customer instead of Diamond Automotive. (*Id*. ¶ 29.) Gasbarre's initial proposal dated January 7, 2013, lists "Diamond Automotive Power" as the customer. (ECF No. 28-1 at 5.) On or about March 6, 2013, Gasbarre and IAP entered into a contract for Gasbarre to sell IAP a furnace and a hydraulic press. (ECF No. 1 ¶¶ 30-31.)

Employees from IAP and or Diamond Automotive traveled to Dubois, Pennsylvania frequently to inspect the progress and to Gasbarre's office in Michigan for training. (*Id*. ¶¶ 38-43.) All equipment was delivered and installed at the plant in Mexico by June 2014. (*Id*. ¶ 44.) It is alleged that Defendants accepted delivery and made partial payments totaling $1,335,000 but still owe $961,707.94 for the press and furnace. (*Id*. ¶¶ 45-46.) Gasbarre alleges that Defendants subsequently made several promises to pay the remainder but never actually did so. (*Id*. ¶¶ 47-66.) Most of the communications regarding the Defendants' promises to pay

---

[2] As discussed in more detail later in this Memorandum Opinion, there exists both Diamond Automotive Florida and Diamond Automotive Mexico.

came from Said Carbajal. (*Id*. ¶¶ 49-66.) Based on these allegations, Gasbarre brings claims against IAP and Diamond Florida for breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing.

**B. Summary of Arguments and Facts from Discovery**

The parties also submitted additional facts and arguments after conducting limited discovery into the issue of personal jurisdiction. The basis for each party's position can be summarized as follows.

Gasbarre takes the position that Diamond Florida, Diamond Mexico, and IAP are all essentially the same entity and that they have been playing "an elaborate shell game." (ECF No. 13 at 2.) Under Gasbarre's theory, employees of the combined entity negotiated with Gasbarre as Diamond Automotive, while keeping it vague as to whether it was Diamond Mexico, Diamond Florida, or both, and then at the last minute switched in a third entity, IAP, as the party to the contract. When sued, Diamond Florida claims no involvement and no personal jurisdiction and IAP attempts to dodge service. This "shell game" as Gasbarre calls it, would leave Gasbarre with no remedy to collect the money owed to it for goods shipped in good faith to Mexico.

Gasbarre points to a number of facts in support of its prima facie showing of this Court's personal jurisdiction over Diamond Florida. First, it submits that in response to its interrogatories, Diamond Florida was unable to produce significant corporate documents, including records of the Board of Director's, minutes of meetings, or documentation of stockholder meetings. (ECF No. 28 at 9-10, 18.) The only two shareholders of Diamond Florida are its President, Hector Carbajal Vazquez, and Said Carbajal Vazquez, who is also a director of

IAP and Diamond Mexico. (*Id*. at 13.) Additionally, the treasurer of Diamond Florida, Gregorio Carbajal, was simultaneously a director and general manager of IAP. (*Id*. at 14.) Gregorio Carbajal and Said Carbajal were both involved in the negotiations with Gasbarre and were described to Gasbarre as "investors in the project." (*Id*. at 14-15.) Diamond Florida was founded in 2012 and capitalized with $1,000 in shares and a loan from Hector Carbajal Vazquez. (ECF No. 28-1 at 24.) Diamond Mexico's website (www.diamondautomotive.com.mx) shows that Diamond Mexico and Diamond Florida share a unified marketing image, including a logo with the words "Diamond Power." The website also prominently displays IAP's logo, and lists the physical address and email address of Diamond Florida. (ECF No. 28 at 16.) The same logo also appears on Diamond Florida's Facebook page. (*Id*.) Statements suggesting the three companies are part of the same group have also appeared in the press. (*Id*. at 17.) Likewise, Diamond Florida and IAP are represented by the same attorneys. (*Id*. at 20.)

For its part, Diamond Florida argues that the two entities[3] are simply different companies; that Diamond Florida had no involvement in the contract between Gasbarre and IAP; and that Gasbarre has failed to come forward with sufficient evidence to support an alter ego theory. In support of its position, Diamond Florida relies largely on a sworn affidavit from its President, Hector Carbajal Vazquez, which states that the companies are separate. (ECF Nos. 9-1; 29 at 7) (IAP and Diamond Florida do not own shares in each other and "Diamond Automotive Florida is not a parent company, subsidiary, agent, shareholder, alter ego, or affiliate of Diamond Automotive Mexico.".)

---

[3] Diamond Florida's exact position as to how Diamond Mexico fits in with Diamond Florida is not entirely clear and its position as to how Diamond Mexico relates with IAP is even less clear. However, it strongly argues that Diamond Florida is not an alter ego of IAP.

5

With respect to the President, Gasbarre's attorneys state that they wanted to depose him, but were told he could only be available for deposition in Mexico and not the United States. (ECF No 28 at 19) ("This Court is thus told that a company named Diamond in Florida, whose President will only appear in Mexico, has nothing to do with a company named Diamond in Mexico . . . .").

The motion has now been extensively briefed (ECF Nos. 9, 13, 27, 28, 29, 40, 44-1), and the parties have had the opportunity to conduct limited discovery as to the issue of personal jurisdiction (ECF No. 26). The motion is now ripe for disposition.

**IV.     Standard of Review**

In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must prove "by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). If the Court does not hold an evidentiary hearing on the issue of personal jurisdiction, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). However, a plaintiff must base its prima facie showing of personal jurisdiction "on evidence of specific facts set out in the record." *In re Enterprise Rent–A–Car Wage & Hour Employment Practices Litigation*, 735 F.Supp.2d 277, 307 (W.D. Pa. 2010) (internal citations omitted).

Diamond Florida also moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows a party to seek dismissal of a complaint or any portion of a

6

complaint for failure to state a claim upon which relief can be granted. Although the federal pleading standard has been "in the forefront of jurisprudence in recent years," the standard of review for a Rule 12(b)(6) challenge is now well established. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209 (3d Cir. 2009).

In determining the sufficiency of a complaint, a district court must conduct a two-part analysis. First, the court must separate the factual matters averred from the legal conclusions asserted. *See Fowler*, 578 F.3d at 210. Second, the court must determine whether the factual matters averred are sufficient to show that plaintiff has a "'plausible claim for relief.'" *Id*. at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint, however, need not include "'detailed factual allegations.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Moreover, the court must construe the alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *See id*. at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). However, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 556 U.S. at 678. Rather, the complaint must present sufficient "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, whether a plaintiff has shown a "plausible claim for relief" is a context-specific inquiry that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The relevant record under consideration includes the complaint and any "document integral to or explicitly relied upon in the complaint." *U.S. Express Lines*,

*Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). If a complaint is vulnerable to dismissal pursuant to Rule 12(b)(6), the district court must permit a curative amendment, irrespective of whether a plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236; *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

V.  Discussion

### A. Personal Jurisdiction and Alter Ego Liability

The alter-ego theory of liability provides that a parent can be responsible for the acts of a subsidiary if a plaintiff can show that the two corporations, in all aspects of the business, functioned as a single entity. *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001). The alter-ego theory can also be used to impute a subsidiary's contacts with a forum to the parent company for purposes of establishing personal jurisdiction. *See Lucas v. Gulf & Western Industries, Inc.*, 666 F.2d 800, 805–06 (3d Cir. 1981) (abrogated on other grounds by *EF Operating Corp. v. American Bldgs.*, 993 F.2d 1046, 1049 (3d Cir. 1993)); *In re Enterprise*, 735 F.Supp.2d at 317.

The alter-ego test for personal jurisdiction is "less stringent" than the test for piercing the corporate veil to impose liability. *In re Enterprise,* 735 F.Supp.2d at 319. However, to establish personal jurisdiction under the alter-ego theory, a plaintiff must show something more than simply a parent-subsidiary relationship. *See Lucas,* 666 F.2d at 805–06 ("[A] foreign corporation is not subject to the jurisdiction of the forum state merely because of its ownership of the shares of stock of a subsidiary doing business in the state."); *Action Mfg. Co., Inc. v. Simon Wrecking Co.,* 375 F.Supp.2d 411, 420 (E.D. Pa. 2005) ("[A] parent-subsidiary relationship is by

8

itself an insufficient reason to pierce the corporate veil in the jurisdictional context."). Instead, "the alter-ego test looks to whether the degree of control exercised by the parent is greater than normally associated with common ownership and directorship and whether the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." *In re Enterprise*, 735 F.Supp.2d at 319 (internal citations omitted).

Courts utilize a 10–factor test to evaluate the relationship between a parent and a subsidiary under the alter-ego theory, including whether:

(1) the parent owns all or a significant majority of the subsidiary's stock;
(2) commonality of officers or directors exists between the two corporations;
(3) the corporate family possesses a unified marketing image, including common branding of products;
(4) corporate insignias, trademarks, and logos are uniform across corporate boundaries;
(5) corporate family members share employees;
(6) the parent has integrated its sales and distribution systems with those of its subsidiaries;
(7) the corporations exchange or share managerial or supervisory personnel;
(8) the subsidiary performs business functions that would ordinarily be handled by a parent corporation;
(9) the parent uses the subsidiary as a marketing division or as an exclusive distributor;
(10) the parent exercises control or provides instruction to the subsidiary's officers and directors.

*Id.* at 318-19; *Bell v. Fairmont Raffles Hotel Int'l*, No. CIV.A. 12-757, 2013 WL 6175717, at *3 (W.D. Pa. Nov. 25, 2013).

Despite these factors, "[n]o one aspect of the relationship between the two corporations unilaterally disposes of the analysis, and the court may consider any evidence bearing on the

9

corporations' functional interrelationship." *In re Chocolate Confectionary Antitrust Litigation*, 647 F.Supp.2d 580, 598 (M.D. Pa. 2009). Other factors that courts look at include those looked at in piercing the corporate veil analysis, such as failures to observe corporate formalities and gross undercapitalization. *Id*. at 570.

Based on what has been presented to the Court at this stage, the allegations in the Complaint and the few facts gleaned from the limited discovery, Gasbarre has made a prima facie showing of alter ego jurisdiction over Diamond Florida. Most obviously, the second and third factors of the ten factors used by the Third Circuit Court of Appeals are satisfied. As already discussed, IAP and Diamond Florida share two overlapping directors and officers. They also share a unified marketing image as evidenced by the website. On the other hand, some of the factors, such as the fifth, sixth, and eighth, have not been alleged or supported.

Diamond Florida argues that according to the case law, overlapping directors and similar evidence of a company's website are not alone enough to establish alter ego status. (ECF Nos. 9 at 10-11; 44-1 at 6-7.) This is more or less correct. *See, e.g., Bell*, 2013 WL 6175717. However, there are a number of other details that weigh in favor of finding a prima facie showing that Defendants are alter egos of each other.

First, it is worth noting that the overlapping director factor is uniquely implicated in this case. IAP and Diamond Florida do not simply have directors in common, but both of the individuals that the two companies share were involved (heavily involved, in the case of Said Carbajal) in the events at issue in the case. (ECF Nos. 1 ¶¶ 28, 49-60, 63; 28-1.) Likewise, while one company does not own a significant portion of the other's stock, Said Carbajal, a director of

IAP, is one of only two shareholders of Diamond Florida. Accordingly, the first factor also weighs in favor of alter ego status.

There are a number of other details that cast doubt on Defendants' claim that they are entirely separate companies. Perhaps most concerning is Diamond Florida's failure to produce significant corporate documents such as records pertaining to the Board of Director's, minutes of meetings, or documentation of stockholder meetings. The lack of such records suggests a failure to observe corporate formalities. Similarly, there is the possibility that Diamond Florida is significantly undercapitalized. (ECF No. 28-1 at 24.) Both gross undercapitalization and failure to observe corporate formalities are important factors in piercing the corporate veil analysis. *See, e.g., Welker v. Carnevale*, No. 3:14-CV-149, 2016 WL 7217204, at *4 (W.D. Pa. Dec. 12, 2016) (citing *Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.*, 643 F.Supp.2d 675, 695 (E.D. Pa. 2009)). As discussed earlier, the same considerations in piercing the corporate veil analysis also apply to questions of alter ego jurisdiction, and the test for alter ego jurisdiction is actually "less stringent." *In re Enterprise,* 735 F.Supp.2d at 319. Also a relevant consideration is the fact that both Defendants are represented by the same attorneys. *Directory Dividends, Inc. v. SBC Commc'ns, Inc.*, No. CIV.A. 01-CV-1974, 2003 WL 21961448, at *5 (E.D. Pa. July 2, 2003) ("it is significant that the same attorneys represent all of the Defendants in the instant litigation with the exception of [one]") (citing *Genesis Bio Pharm., Inc. v. Chiron Corp.*, 27 F. App'x 94, 98 (3d Cir. 2002)). The allegation in the Complaint that Gasbarre was told for most of the contract negotiations that it was dealing with "Diamond Automotive" likewise raises questions about the relationship between the entities. And then there is the curious case of a President of an

11

American company, who is disclaiming any connection to two Mexican companies, insisting he is only available for deposition in Mexico. (ECF Nos. 9-1; 28-1 at 19.)

Diamond Florida's filings with respect to the motion are also a bit puzzling. While it is true that companies can be very closely related, even in the case of a wholly-owned subsidiary, and still not be alter egos, this is not really what Diamond Florida argues. Rather, at times both its briefs and the affidavit submitted by its President, somewhat bafflingly, make it sound nearly as though Diamond Florida and IAP have nothing whatsoever to do with each other or Diamond Mexico. That position is simply not supported by the facts.

The Court reiterates that Gasbarre need only make a prima facie case, supported by evidence of the record, that personal jurisdiction exists. When all of the above is taken together, it appears entirely plausible that, to quote Shakespeare, "something is rotten in the state of Denmark." The Court finds that Gasbarre has established a prima facie case of personal jurisdiction over Diamond Florida under an alter ego theory. The lawsuit will go forward into general fact discovery with both IAP and Diamond Florida as Defendants. Diamond Florida may, if appropriate, raise this issue again at summary judgment.

### B. Failure to State a Claim

Diamond Florida also argues that Gasbarre fails to state claims against it for each of the claims in the Complaint. (ECF No. 9 at 11-15.) Although these arguments are not mentioned in the subsequent rounds of briefing, the Court will discuss them quickly. Defendant's argument for dismissal of the breach of contract and unjust enrichment claims are denied for the reasons stated above.

With respect to the claim at Count IV for breach of the implied covenant of good faith and fair dealing, Diamond Florida argues that under Pennsylvania law there is no independent cause of action for breach of the implied covenant of good faith and fair dealing. Applying Pennsylvania law, where the conduct forming the basis of the plaintiff's breach of the covenant of good faith and fair dealing claim is the same conduct forming the basis for the breach of contract claim, the claims merge and there is no separate cause of action. *See e.g., Burton v. Teleflex, Inc.*, 707 F.3d 417, 432 (3d Cir. 2013); *Smith v. Lincoln Ben. Life Co.*, No. CIV. A. 08-01324, 2009 WL 789900, at *12 (W.D. Pa. Mar. 23, 2009), aff'd, 395 F. App'x 821 (3d Cir. 2010). Rather, "in practice, the covenant of good faith functions 'as an interpretive tool' to aid the court in evaluating breach of contract claims . . . ." *Tuno v. NWC Warranty Corp.*, 552 F. App'x. 140, (3d Cir. 2014) (quoting *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000)).

Therefore, Gasbarre's claim for breach of the covenant of good faith and fair dealing will be dismissed as a separate claim from the breach of contract claim.

**V. Conclusion**

For the reasons stated above, the motion to dismiss filed by Defendant Diamond Automotive Group Florida will be granted as to the claim for breach of the covenant of good faith and fair dealing and denied in all other respects.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| GASBARRE PRODUCTS, INC., | ) | CIVIL ACTION NO. 3:16-53 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| DIAMOND AUTOMOTIVE GROUP FLORIDA, INC. and INDUSTRIAL DE AUTOPARTES PARRAL S. DE R. L. DE C.V., | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 23rd day of March, 2017, upon consideration of the motion to dismiss filed by Defendant Diamond Automotive Florida (ECF No. 8), and in accordance with the accompanying memorandum opinion, **IT IS HEREBY ORDERED** that the motion to dismiss is **GRANTED in part and DENIED in part**. Specifically, the claim for breach of the covenant of good faith and fair dealing is dismissed and the motion is denied in all other respects. An Initial Rule 16 Scheduling Conference will be scheduled by separate order.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE